**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MONO-SYSTEMS, INC.,** | : | |
| **BUZZARD CORPORATION,** | : | |
| **ZORBA INDUSTRIES, INC., and** | : | **Case No.:** |
| **JORDAN HANDLER,** | : | |
| c/o Victor A. Walton, Jr., Esq. | : | |
|    Elizabeth S. Alexander, Esq. | : | |
|    Vorys Sater Seymour and Pease LLP | : | **Judge:** _____ |
|    52 East Gay Street, P.O. Box 1008 | : | |
|    Columbus, OH 43216-1008 | : | |
| | : | |
|                 Plaintiffs, | : | |
| | : | |
|    v. | : | |
| | : | |
| **NIEDAX MONOSYSTEMS, INC.** | : | |
| ACFB Incorporated, Registered Agent | : | |
| 200 Public Square, Suite 2300 | : | |
| Cleveland, OH 44114 | : | |
| | : | |
|                 Defendant. | : | |

## COMPLAINT

Mono-Systems, Inc., Buzzard Corporation, Zorba Industries, Inc., and Jordan Handler (collectively, the "Sellers"), by their undersigned counsel, for their Complaint against Niedax MonoSystems, Inc. ("Buyer"), allege as follows:

### NATURE OF THE ACTION

1.    Plaintiffs, sellers of certain assets under the Asset Purchase Agreement (the "Agreement") between Sellers and Buyer, dated December 16, 2020, bring this action seeking specific performance of that Agreement, damages for its breach, and equitable relief.

2.    Plaintiffs sold all assets of a thriving business to Buyer for a payment to be made in two installments: one at the closing of the sale, and another, the Earn-Out Payment, a year

later, provided the business met a certain earning threshold for 2021. The Earn-Out Payment—at least $3,250,000, and perhaps as much as $8,250,000—was important to Sellers, so the Agreement required Buyer to provide Sellers with financial data to check whether the 2021 earning threshold was met.

3.      The deal closed and the initial payment was made without incident. However, soon thereafter, Buyer appears to have decided to violate the Agreement in changing the business model in 2021 for the primary purpose and with the effect of reducing sales and earnings in and the Earn-Out Payment. Buyer discarded a substantial amount of inventory and eliminated over a dozen product lines, including inventory for which orders had already been placed by customers, decreasing profits for 2021. And, though it admitted that the business was on track to reach the earnings target for 2021 as of August of that year (entitling Sellers to the Earn-Out Payment), Buyer later claimed that there was an accounting mistake and the business had not been profitable. Then, Buyer failed to give Sellers certain financial reports it was required to provide under the Agreement—financial reports Sellers would need to verify that this "mistake" existed and that Buyer properly calculated the Earn-Out Payment. These reports were not provided by the deadline set in the Agreement, and, despite many demands, have not been provided to this day.

4.      Sellers bring this action to obtain the financial reports and recover the Earn-Out Payment they are entitled to under the Agreement.

### THE PARTIES

5.      Each of the corporate plaintiffs, Mono-Systems, Inc., Buzzard Corporation, and Zorba Industries, Inc. are corporations organized and validly existing under the laws of the State of New York and each maintains its principal place of business in the State of New York.

6.      Jordan Handler is a natural person who is a resident of the State of Texas.

7.      Upon information and belief, Defendant Niedax MonoSystems, Inc. is incorporated under the laws of the State of Ohio and maintains its principal place of business in the State of Ohio.  Upon information and belief, until 2021, Niedax MonoSystems, Inc. was known as Niedax Mono, Inc., and under that name was a special purpose entity created in 2020 for purpose of the acquiring the assets Sellers conveyed pursuant to the Agreement.

## JURISDICTION AND VENUE

8.      Subject-matter jurisdiction is based upon 28 U.S.C. § 1332(a) and (a)(1), in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and the controversy is between citizens of different states.

9.      This Court has jurisdiction over the defendant because it is a resident of Ohio and because, in the Agreement, it agreed that "all actions or proceedings arising out of or in connection with this Agreement shall be tried and litigated exclusively in the state or federal courts located in Franklin County, Ohio."

10.      Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b)(1) and (c)(2) because the defendant is a resident of this judicial district and because the Agreement provides that "all actions or proceedings arising out of or in connection with this Agreement shall be tried and litigated exclusively in the state or federal courts located in Franklin County, Ohio."

## BACKGROUND FACTS

### A. The Asset Purchase Agreement

11.      Each of the corporate plaintiffs, together with Jordan Handler as their sole shareholder, as Sellers, entered into the Agreement to sell substantially all of the assets of the corporations to defendant Niedax MonoSystems, Inc. as Buyer.

12.    The closing under the Agreement took place as of December 31, 2020.

13.    Pursuant to the Agreement, the purchase price for the assets was the sum of $15,500,000 (the "Initial Installment"), subject to a working capital adjustment, plus an additional amount referred to in the Agreement as the "Earn-Out Payment."

14.    The Agreement states that the Earn-Out Payment shall be an amount "equal to 7.5 times the consolidated 2021 EBITDA [earnings before interest, taxes, depreciation and amortization] of the businesses acquired from the Sellers (pro forma for the elimination of any corporate charges or overhead booked by Buyer or its Affiliates other than market compensation of up to $125,000 allocated to one senior-management level employee) minus the Initial Installment."

15.    The Agreement further provides that the Earn-Out Payment is subject to the conditions that 2021 EBITDA shall be equal to or greater than $2,500,000, and that the Earn-Out Payment plus the Initial Installment shall not exceed $23,750,000.

16.    There is no dispute between the parties as to the payment of the Initial Installment.

17.    As to the Earn-Out Payment, the Agreement provides:

The entire Earn-Out Payment shall be paid promptly upon preparation of Mono-Systems' financial statements for the period ending on December 31, 2021 by Mono-Systems' auditors, but not later than April 30, 2022. For purposes of this Agreement, the Earn-Out Payment shall be calculated in accordance with GAAP, with no accruals, charges or adjustments that are not in the ordinary course of business, or that reflect business or financial decisions made for the primary purpose of reducing the Earn-Out Payment.

18.    Buyer did not pay the Earn-Out Payment by April 30, 2022, nor subsequently.

19.    Buyer has failed and refused to provide Sellers with the financial statements expressly referred to in the Agreement, despite repeated demands for this information, and has

4

not provided sufficient information to allow Sellers to assess the adequacy of Buyer's purported calculation of EBITDA for the year ended December 31, 2021 (the "Earn-Out Period").

20.     In the Agreement, the "Parties agree[d] that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity."

**B.  Buyer's Bad Faith Attempt to Avoid the Earn-Out Payment.**

21.     After the closing, Buyer deliberately and in bad faith made a number of business and financial decisions for the primary purpose of reducing the Earn-Out Payment, thereby depriving Sellers of the benefit of the Agreement.

22.     Following its acquisition of Sellers' business, Buyer eliminated more than 14 product lines and categories and disposed of related inventory, including products listed in outstanding quotations issued to customers for substantial orders.

23.     Buyer removed large quantities of finished inventory from the shelves and discarded the items into dumpsters in the factory parking lot.

24.     The discarded inventory and discontinued product lines were of a quality and quantity usable and salable in the ordinary course of business consistent with past practice, and highly valuable.

25.     The market value of the discarded inventory and product lines is at least $700,000.

26.     Before the closing, Sellers had accepted, but not yet fulfilled, orders for some of the inventory items that Buyer discarded.

5

27.    Buyer could have fulfilled those orders using the discarded inventory items at little additional cost to Buyer.

28.    Had Buyer fulfilled those orders, it would have earned additional profits.

29.    In addition to those orders, before the Closing, Sellers had made quotations or submitted bids for the sale of the discarded inventory items that, if accepted, would have generated additional profit for Buyer.

30.    These quotations and bids were not rejected before Buyer discarded the inventory items quoted or bid.

31.    Because the inventory items were discarded, Buyer was unable to fulfill those quotations and bids.

32.    Moreover, Buyer instructed its Quotation Manager and Customer Service Managers to stop all sales efforts with respect to the discontinued product lines, resulting in lost orders from electrical contractors seeking products that were no longer offered, and in lost customers.

**C.  The Earn-Out.**

33.    On August 29, 2021, in response to an inquiry from Sellers' counsel about earnings for the first and second quarter of the 2021 Earn-Out Period, Buyer's counsel, Christina Hultsch, delivered summary financial information showing Total Revenue of $9,238,778 and EBITDA of $1,259,811 for the first half of the Earn-Out Period.

34.    No further information about the results of the Earn-Out Period was received from Buyer until, upon inquiry from Sellers' counsel about the audited financial statements required under the Agreement, Buyer's counsel advised on March 29, 2022: "The client advises that it

will be another 2-3 weeks before the audited 2021 financial statements will be ready. I will share as soon as I receive a copy."

35. On April 26, 2022, Ms. Hultsch sent an email attaching, without explanation, not "the audited financial statements" she previously referenced, but a PDF consisting of approximately 100 lines of undocumented, ungrouped numbers labelled "Amount" corresponding to a column labelled "Account." The filename of the PDF was "Niedax MonoSystems 2021 audited Trial Balance." The last line of the file said: "Net Loss $3,644,709."

36. When Sellers' accountant said that ungrouped trial balances did not provide sufficient information to determine the Earn-Out Payment and noted that the Agreement expressly stated that the Earn-Out Payment would be paid "promptly upon preparation of Mono-Systems' financial statements for the period ending on December 31, 2021 by Mono-Systems' auditors but not later than April 30, 2022," Ms. Hultsch replied:

> unfortunately, since the financial statements are consolidated, they don't have anything else they can provide that would be limited to MonoSystems information. The trial balance is the only way to get you the separate operations of MonoSystems without sending along Niedax, Inc. information as well.

37. On April 28, 2022, Ms. Hultsch responded to Sellers' complaint about ungrouped trial balance amounts by sending an excel spreadsheet with the trial balance amounts grouped. This time, the last line of the spreadsheet said: "EBITDA ($3,270,727)"

38. When reminded that in August 2021 Buyer advised that the company had EBITDA of $1,259,000 in just the first six months of the Earn-Out Period, Ms. Hultsch responded that those results were a mistake.

39. Notably, the spreadsheet Buyer provided includes a line item "Inventory Adjustment — $4,200,202." This is striking not just because of Buyer's earlier decision to discard good, salable inventory, but also because it is an amount that exceeded the entire value of

the inventory Buyer acknowledged receiving from Sellers at Closing before the Earn-Out Period even began.

40.     Buyer has not provided Sellers with any explanation or documentation of the "Inventory Adjustment" except to say that that in the third quarter of 2021 suddenly Buyer noticed a mistake in its inventory reports and that this adjustment was a correction.

41.     Upon review of the trial balance information, in an email forwarded to Ms. Hultsch, Sellers' accountant noted the absence of auditors' footnotes, and, among other things, that the spreadsheet contained no balance sheet information, which was needed to determine the Earn-Out Payment. He also noted that payroll expenses and costs of goods were oddly presented, and that no amortization was included in lines 127-129 of the spreadsheet that covered the EBITDA adjustment required by the Agreement.

42.     In an email on May 6, 2022, Ms. Hultsch replied to the omission of amortization in Buyer's EBITDA calculation as follows: "This was an error. Because the Amortization Allocation was newly entered for 2021 but after the year end, it was simply never mapped over."

43.     Applying the deduction for amortization, using Buyer's trial balance data, just for the sake of discussion, increases EBITDA by $1,371,711.

44.     The Agreement prohibited Buyer from burdening the Earn-Out EBITDA with "any corporate charges or overhead booked by Buyer or its Affiliates", with one exception: if Buyer chose during the Earn-Out Period to add "one senior-management level employee" as a back-up to Jordan Handler, with the charge for such new employee capped at $125,000.

45.     However, although Buyer terminated Mr. Handler's employment in the second quarter, Buyer chose not to hire a replacement manager at any time during 2021.

46. When questioned whether Buyer's trial balance properly reflected the Agreement's prohibition against burdening EBITDA with corporate overhead, Ms. Hultsch's reply confirmed that no such management employee was ever hired during 2021, and stated:

> A management fee of $249,151.63 was expensed in 2021 for the services provided by Niedax affiliated companies to Niedax MonoSystems, Inc. It covered a share of C. Steele and K. Müller's salary… and related expenses (e.g., travel).

47. By virtue of the foregoing, Buyer's purported EBITDA calculation violated the terms of the Agreement by imposing this corporate overhead charge of $249,151.63.

48. When Sellers repeated their request for full audited statements with footnotes for the Earn-Out Period, Ms. Hultsch responded:

> We are looking through the consolidated statements and will pull all applicable footnotes for your review. Again, the statements are consolidated and there are no standalone audited financial statements for MonoSystems and we will not share any information that relates to the parent entity.

49. As of the date of this complaint Sellers have not received the audited financial statements or footnotes, as required by the Agreement, or any further information or explanation about the results of the company for 2021 or the Earn-Out calculation.

50. Indeed, beginning at the end of March 2022, with the April 30, 2022 deadline for calculation and payment of the Earn-Out Payment fast approaching, Sellers' counsel made no fewer than eleven unsuccessful email requests to Buyer's counsel for financial statements and related information relevant to the Earn-Out calculation.

**First Cause of Action**
**Breach of Contract**

51. Sellers reallege and incorporate by reference each of the foregoing paragraphs as if set forth here in full.

52. The Agreement is a valid and existing contract between Sellers and Buyer.

53. Sellers have fully complied with their obligations under the Agreement.

54.     Buyer has breached its obligations under the Agreement in that it recorded transactions with the specific intent of falsely reducing the Earn-Out Payment, did not pay the Earn-Out Payment by April 30, 2022, or subsequently, and has repeatedly refused to provide Sellers with the financial statements expressly referred to in the Agreement and required to be provided by the Agreement, nor adequate accounting of information regarding EBITDA for the Earn-Out Period.

55.     Sellers have been damaged by Buyer's breaches, and are entitled to an order and judgment directing Defendant to (i) specifically perform the Agreement by providing to Plaintiffs promptly a full set of audited financial statements of Niedax MonoSystems Inc. for the year 2021; (ii) pay damages to Plaintiffs in an amount to be proven at trial, believed to be in excess of $3,250,00, together with statutory pre-judgment interest thereon, comprising the Earn-Out Payment, calculated in conformity to the pro forma adjustments as provided in the Agreement; and (iii) to pay Plaintiffs post-judgment interest, and the costs and disbursements expended as a result of this action.

## Second Cause of Action
## Breach of the Covenant of Good Faith and Fair Dealing
(In the Alternative)

56.     Sellers reallege and incorporate by reference each of the foregoing paragraphs as if set forth here in full.

57.     The Agreement is a valid and existing contract between Sellers and Buyer.

58.     Under the Agreement, Buyer had an obligation to compute the Earn-Out Payment in good faith.

59.     Under the Agreement, Buyer had an obligation to operate the business in 2021 in good faith.

60. Under the Agreement, Buyer had an obligation not to take acts that had a primary purpose of avoiding the Earn-Out Payment, including by reducing 2021 EBITDA.

61. By intentionally destroying salable inventory, Buyer wasted corporate assets to avoid the Earn-Out Payment.

62. By understating Niedax Monosystems, Inc.'s 2021 EBITDA, Buyer avoided paying the Earn-Out Payment.

63. In doing so, it acted in bad faith to deprive Sellers of the benefit of the Agreement.

64. Sellers have fully complied with their obligations under the Agreement.

65. Buyer has breached the covenant of good faith and fair dealing implied in the Agreement by operation of law.

66. Accordingly, Sellers are entitled to an order and judgment directing Defendant to (i) specifically perform the Agreement by providing to Plaintiffs promptly a full set of audited financial statements of Niedax MonoSystems Inc. for the year 2021; (ii) pay damages to Plaintiffs in an amount to be proven at trial, believed to be in excess of $3,250,00, together with statutory pre-judgment interest thereon, comprising the Earn-Out Payment, calculated in conformity to the pro forma adjustments as provided in the Agreement; and (iii) pay Plaintiffs post-judgment interest, and the costs and disbursements expended as a result of this action.

**Third Cause of Action**
**Unjust Enrichment**
(In the Alternative)

67. Sellers reallege and incorporate by reference each of the foregoing paragraphs as if set forth here in full.

68. By intentionally destroying salable inventory and understating Niedax MonoSystems, Inc.'s 2021 EBITDA, Buyer has avoided paying Sellers the Earn-Out Payment.

11

69.     Buyer has been enriched at Sellers' expense.

70.     It would be against equity and good conscience for Buyer to retain the funds that should have been paid to Sellers as the Earn-Out Payment.

71.     Accordingly, Sellers are entitled to an order and judgment directing Defendant to (i) pay to Plaintiffs an amount to be proven at trial, believed to be in excess of $3,250,00, together with statutory pre-judgment interest thereon, comprising the Earn-Out Payment, calculated in conformity to the pro forma adjustments as provided in the Agreement; and (ii) to pay Plaintiffs post-judgment interest, and the costs and disbursements expended as a result of this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendant as follows:

1.     Plaintiffs request an order and judgment directing Defendant to provide to Plaintiffs promptly a full set of audited statements of Niedax MonoSystems Inc. for the year 2021;

2.     Plaintiffs request a judgment for Plaintiffs in the amount of the Earn-Out Payment calculated in conformity to the pro forma adjustments as provided in the Agreement, together with pre- and post-judgment interest thereon from April 30, 2022;

3.     Plaintiffs request a judgment awarding them the costs of this action, including disbursements expended as a result of this action; and

4.     Plaintiffs request such other and further relief as the Court deems just and proper.

Respectfully submitted,


Dated: _____9-19-2022_____          /s/  *Victor A. Walton, Jr.*_____
                                          Victor A. Walton, Jr. (0055241)
                                          Elizabeth S. Alexander (0096401)
                                          Vorys, Sater, Seymour and Pease LLP

52 E. Gay Street
P.O. Box 1008
Columbus, OH  43216-1008
Telephone:  614-464-5691
vawalton@vorys.com
esalexander@vorys.com

*Attorneys for Mono-Systems, Inc.; Buzzard Corporation; Zorba Industries, Inc.; and Jordan Handler*

Of Counsel:
Wojciech Jackowski, Esq. (Pro Hac Vice Admission to be filed)
Alexander Mirkin, Esq. (Pro Hac Vice Admission to be filed)
Offit Kurman, P.A.
590 Madison Avenue, 6th Floor
New York, NY  10022
Tel: (212) 545-1900
Fax: (212) 545-1656
wjackowski@offitkurman.com
amirkin@offitkurman.com