# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MONO-SYSTEM, INC., et al.,**

      **Plaintiff,**

v.

**NIEDAX MONOSYSTEMS, INC.,**

      **Defendant.**

**Civil Action 2:22-cv-3456**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Elizabeth P. Deavers**

## STIPULATION AND ORDER REGARDING PROTOCOL FOR THE PRODUCTION OF DOCUMENTS

IT IS HEREBY STIPULATED AND AGREED, by and among the Parties to the above-captioned lawsuit, through their undersigned counsel, as follows:

**A.  GENERAL**

1. The Parties have conferred as to discovery of paper documents and electronically-stored information (collectively, "Documents"), and their agreements on these issues is memorialized herein. The Parties will continue to confer on these topics as necessary over the course of discovery, including with respect to any unanticipated issues that may arise and require modification of the matters addressed herein.

2. Nothing in this protocol waives a Party's right to object to certain document requests or to withhold information from production. All objections are preserved.

**B.  DOCUMENTS RESPONSIVE TO REQUESTS FOR PRODUCTION**

4. The Parties agree to identify Documents responsive to requests for production made pursuant to Federal Rule of Civil Procedure 34 by (a) collecting all Documents in their possession, custody, or control that are stored in reasonably-accessible locations likely to contain

responsive Documents, including, at a minimum, all reasonably-accessible Documents (i) identified in, or (ii) in any location identified in, or (iii) in the custody of any custodians identified in Exhibit A hereto and (b) searching those Documents for keywords search terms to be negotiated in good faith by the parties on a request-by-request basis. The Parties agree to cooperatively work together in good faith to narrow, revise, or amend, their proposed search terms during their exchange of Documents responsive to their respective requests made pursuant to Rule 34.

5. Prior to performing the keyword searches described in paragraph 4(b) of this Stipulation, the Parties will perform optical character recognition on all non-searchable Documents (other than attachments to searchable emails) collected pursuant to paragraph 4(a) of this Stipulation except for those Documents which, because of their format or content (e.g., AutoCAD drawings; photographs; audio- or video-recordings; etc.) would have significant non-textual contents (the "Non-Text Documents"). Non-Text Documents will be manually reviewed by the producing Party for relevance.

6. Documents identified through the procedures set forth in paragraph 4(b) of this stipulation shall be reviewed for relevance. If a Party elects to use Technology Assisted Review ("TAR") in lieu of a linear review, the Parties will meet and confer in good faith to develop written protocols for use of TAR.

7. The Parties agree to produce any Documents that they become actually aware were collected pursuant to paragraph 4(a) of this Stipulation and are responsive to a request for production but would not be produced pursuant to the procedure in paragraphs 4(b) and 5 of this Stipulation.

## C. DE-DUPLICATION

8. The Parties agree to de-duplicate their document productions on a family basis, but to include duplicate custodian and duplicate file path meta-data in their load files sufficient to fully re-duplicate the production if necessary. If a Party wishes to de-duplicate its production using any criteria other than hash values, it will so advise the receiving Party. The Parties agree that there is no need for duplicate production of paper documents available for production in electronic format, so long as any such paper document contains content identical to its electronic version and does not contain content unique to the paper version such as handwriting and other marginalia. The Parties further agree that the requesting Party has the right to inspect any paper document withheld on the basis that it was duplicative of a responsive document that existed in electronic form, and, for actually duplicative paper documents, to request copies at its own expense.

## D. ELECTRONIC PRODUCTION FORMAT

9. The Parties agree to produce Documents as .tiff, .jpg, or .pdf images with appropriate load files with OCR or extracted text files in the same folders as their corresponding images, named by the beginning Bates number of the corresponding document. The images should also be Bates-numbered and should be produced so as to preserve any parent-child relationships that existed in their native format. For all documents being produced in imaged format, the Parties agree to produce Standard black and white Group IV, single page .tiffs or color .jpgs or .pdfs at a minimum of 300 dpi. Upon the opposing Party's reasonable request, a Party will re-produce in color or native format any document produced in black and white. The filename of documents produced in native format shall be the beginning Bates production number. The load file provided with the data will include a .dat file for metadata and an .opt file for mapping the

images to the text files. Documents that cannot be fully rendered as .tiff, .jpg, or .pdf files (such as Excel files) will be produced in native format with unique Bates numbers, .tiff, .jpg, or .pdf slip sheets identifying the Documents as having been produced solely in native format, and the metadata agreed upon in paragraph 16, below.

10. Electronic documents shall be filtered using the NIST exclusion list ("de-NISTing"), if necessary to remove from review and production items such as installation files for Microsoft Office or other standard computer operating files that are not user created.

11. Electronic documents and data that are electronically searchable shall be produced in a form that does not remove or degrade this feature. Any documents that are in a language other than English shall be produced with an accompanying certified translation into English.

12. All documents shall be produced with corresponding Bates numbers.

13. The receiving Party may request that specific Documents be produced in native format.

14. With respect to requests for information residing in a structured database file such as an inventory database, the producing Party will comply with reasonable requests from a requesting Party by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic format (i.e. Excel or .csv format), if possible. With respect to each report (or file) so produced (a) the first line of each such report will include the column headers of the data included (to the extent possible); and (b) the file or report will identify the search criteria and the search query used to generate such file or report

15. The producing Party will produce Documents on readily accessible computer or electronic media or by electronic file transfer. The producing Party will properly package all

production media to ensure safe shipping and handling. The producing Party will encrypt all production media prior to shipping of transferring the productions. Password and access information for the produced media will be sent via email to the opposing Party prior to shipment or transfer.

16. The Parties agree to produce information with the following metadata fields where such information is available.

| Field Name | Description |
| --- | --- |
| ProdBeg | Beginning Bates number of the email, application file or paper document |
| ProdEnd | Ending Bates number of the email, application file or paper document |
| Custodian | Custodian of the email, application file or paper document |
| Duplicate Custodians | All custodians of duplicate versions of the email, application file or paper document |
| From | Sender of the email |
| To | Recipients of the email |
| CC | CCs of the email |
| Bcc | BCCs of the email |
| Sent Date Time | Email sent date and time |
| Received Date Time | Email received date and time |
| File Created Date Time | Date and time on when the application file was created |
| File Last Modified Date Time | Date and time on when the application file was last modified |
| File path | The original file path of the native document |
| Duplicate file path | The original file path of any duplicate versions of the native document that were not included in the production |
| Email Subject | Subject line of the email |
| File Name | Filename of the application file |
| File Extension | Document file extension (e.g. XLS, DOC, PPT) |
| File Type | Document file type (e.g. Microsoft Excel, Microsoft Word, |
| Hash Value (MD5) | Unique hash value of the email or application file |
| Title | Where available for native file |
| Author | Where available for native file |

| Native File Path | For documents produced in native format |
|---|---|
| Text File Path | For documents produced with OCR or extracted text files |
| Begin Attachment | The first Bates number of the document family |
| End Attachment | The last Bates number of the document family |

**Delimiters**

Concordance Standard:

| Comma | ¶ | ASCII character (020) |
|---|---|---|
| Quote | Þ | ASCII character (254) |
| Newline | ® | ASCII character (174) |

### E.    PRIVILEGE WITHHOLDING, REDACTION, AND LOGGING

18.    Documents, including Document metadata, may only be redacted to the extent necessary to preserve any claim of privilege, a statutory immunity from discovery, or to enforce a limitation ordered by the Court, and not on responsiveness or relevance grounds.

19.    Disclosure of privileged information shall not be a waiver of any privilege or protection that would apply but for the disclosure. This provision is intended to provide the maximum protection authorized by Federal Rule of Evidence 502(d).

20.    Within a reasonable time of production, each Party will provide a log of all Documents withheld or redacted on the basis of attorney-client privilege, work-product protection, or any other valid form of privilege, immunity, or protection against production ("privilege log"). For searchable, electronically-stored Documents, each Party may opt at its own discretion to create a privilege log using either of the following methods. For all other Documents, each Party shall create a Standard Log, as defined in subsection (ii) of this paragraph.

> i.    **Automated Log**. An automated privilege log will be generated from the following metadata fields, to the extent they exist, as electronic metadata associated with the original electronic documents.

6

- PRODBEG Bates number or record ID number
- SUBJECT
- FILE NAME
- AUTHOR
- SENDER/FROM
- RECIPIENTS/TO
- CC
- BCC
- SENT DATE TIME
- RECEIVED DATE TIME
- FILE CREATED DATE TIME
- FILE LAST MODIFIED DATE TIME
- ATTACHMENT Bates or ID numbers
- PRIVILEGES ASSERTED
- REDACTION OR WITHHOLDING

    a.    With respect to the SUBJECT OR FILENAME fields, the producing Party may substitute a description of the communication where the content of these fields may reveal privileged information but must indicate that the fields have been revised.

    b.    Should the receiving Party in good faith have reason to believe a particular entry on the Automated Log does not reflect a privileged document, it may request a Standard Log for that entry, to be produced within two weeks of the request, or within such other reasonable time as the Parties may agree or the Court may order.

  ii.    **Standard Log.** A standard privilege log will include these standard fields: author/sender/from; recipients/to; cc; bcc; date; privilege type; and a description sufficient to identify the subject matter of the document and the basis for the privilege assertion. The privilege log fields for email strings will contain the information from the top email in the email string. Parties shall also populate a field with all other participants identified on the face of the document not already captured in the top email of the email string.

> Other participants need only be identified for the email strings that are withheld as entirely privileged.

AGREED:

| | |
|---|---|
| OFFIT KURMAN, P.A. | BENESCH FRIEDLANDER COPLAN & ARONOFF LLP |
| By: /s/ Wojciech Jackowski<br>   Wojciech Jackowski | By: /s/ Michael J. Meyer<br>   Michael J. Meyer |
| Wojciech Jackowski (*pro hac vice*)<br>Alexander Mirkin (*pro hac vice*)<br>590 Madison Avenue, 6th Floor<br>New York, New York 10022<br>Tel.: (212) 545-1900<br>wjackowski@offitkurman.com<br>amirkin@offitkurman.com | Michael J. Meyer (0087953)<br>Gregory T. Frohman (0092151)<br>200 Public Square, Suite 200<br>Cleveland, Ohio 44114<br>Tel.: (216) 363-4500<br>mmeyer@beneschlaw.com<br>gfrohman@beneschlaw.com |
| VORYS, SATER, SEYMOUR AND PEASE LLP | *Attorneys for Defendant / Counterclaimant Niedax Monosystems, Inc.* |
| By: /s/ Victor A. Walton, Jr.<br>   Victor A. Walton, Jr. | |
| Victor A. Walton, Jr. (0055241)<br>Elizabeth S. Alexander (0096401)<br>52 East Gay Street<br>P.O. Box 1008<br>Columbus, Ohio 43216<br>Tel.: (614) 464-5691<br>vawalton@vorys.com<br>esalexander@vorys.com | |

*Attorneys for Plaintiffs / Counterclaim Defendants Mono-Systems, Inc.; Buzzard Corporation; Zorba Industries, Inc.; and Jordan Handler*

SO ORDERED:

_____
Magistrate Judge Elizabeth A. Preston Deavers
Southern District of Ohio, Eastern Division

**Exhibit A**

**Date Range:**

**Plaintiff's custodians and non-custodial document locations:**

**Defendants' custodians and non-custodial document locations:**

**Search Terms to be Used by Plaintiff:**

**Search Terms to be Used by Defendants:**